IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| PAUL MICHAEL HUSTON,<br><br>Plaintiff,<br>vs.<br>KELLY GARCIA, et al.,<br><br>Defendants. | No. C20-4021-LTS<br><br>**ORDER** |

## I.    INTRODUCTION

This case is before me on defendants' motion (Doc. 19) for summary judgment, along with plaintiff Paul Huston's motions (Doc. 24) to appoint counsel and for a preliminary injunction (Doc. 25). Huston filed a resistance (Doc. 22) to the defendants' motion, and the defendants filed a reply. Doc. 23. Defendants filed two responses (Doc. 26, 28) and a resistance (Doc. 30) to Huston's motion for preliminary injunction. Huston submitted three additional documents (Doc. 27, 29 and 31) that have been filed as supplements. I find oral argument is not necessary. *See* Local Rule 7(c).

## II.    PROCEDURAL HISTORY

Huston, along with co-plaintiffs Michael Millsap and Syveno Wright, commenced this action by filing an application (Doc. 1) to proceed in forma pauperis, a 42 U.S.C. § 1983 complaint (Doc. 4) and a pro se motion (Doc. 5) to appoint counsel. On March 19, 2021, I filed an initial review order (Doc. 6) in which I granted Huston's request to proceed in forma pauperis, directed each plaintiff to file to file his own, individual amended complaint and denied without prejudice the motion to appoint counsel.

On April 1, 2021, Huston, Millsap, and Wright filed individual amended complaints (Docs. 7, 8, 9) and renewed their motion (Doc. 10) to appoint counsel. Huston's amended complaint again asserted a claim pursuant to 42 U.S.C § 1983 based on alleged violations of his Fourteenth Amendment rights. On March 30, 2022, I filed a second initial review order (Doc. 12) in which I found that only Huston's amended complaint could proceed and again denied without prejudice the motion to appoint counsel.

On April 25, 2022, the defendants filed an answer (Doc. 16) to the amended complaint, along with a motion (Doc. 19) for summary judgment. On May 2, 2022, Huston filed his resistance (Doc. 22) to the motion for summary judgment and on May 4, 2022, the defendants filed a reply (Doc. 23). On June 14, 2022, Huston filed another motion (Doc. 24) to appoint counsel and a motion (Doc. 25) for preliminary injunction. On June 22, 2022, the defendants filed a resistance (Doc. 26) to Huston's motion for preliminary injunction. On June 23, 2022, Huston filed a supplement (Doc. 27) to his motion for preliminary injunction. On June 24, 2022, defendants filed an additional response (Doc. 28) to Huston's supplement. On June 30, 2022, Huston filed another supplement (Doc. 29) to his motion for preliminary injunction. On July 5, 2022, defendants filed a supplemental resistance (Doc. 30) to Huston's motion for preliminary injunction. On July 27, 2022, Huston filed a final supplement (Doc. 31) to his motion for preliminary injunction.

### III. RELEVANT FACTS

Huston did not respond separately to defendants' statement of undisputed facts.[1] "[A] failure to respond to an individual statement of material fact, with

---

[1] Rather, Huston contends that defendant's statement of undisputed facts contains "lies." Doc. 22 at 1.

appropriate appendix citations, may constitute an admission of that fact."[2] *See* N.D. Ia. L. R. 56(b); *see also* Fed. R. Civ. P. 56(e). Therefore, I will treat as admitted all of the facts set forth in defendants' statement. Doc. 22. Thus, the following facts are undisputed.

Huston is a patient at the Civil Commitment Unit for Sexual Offenders (CCUSO). Kelly Garcia is the Director of the Department of Human Services (DHS). Rick Schults was the Administrator of the Mental Health and Disabilities Services Division at DHS, but he has since retired. Jacey Benson is a registered nurse at CCUSO. Jill Webb formerly worked at CCUSO as an ARNP. Jessie Peterson is the Director of Food Services at CCUSO. Huston alleges that the defendants violated his constitutional rights by placing him on a restrictive, healthy diet and refusing to take him off after his A1C levels improved.

Huston has been off and on the healthy diet for several years for a variety of reasons, including diabetes, high cholesterol and stroke history. Doc. 20-1 at 12. In 2018, Huston was placed on the healthy diet because of his high A1C levels. *Id.* at 33. After his A1C levels dropped to 7 in December 2020, he was taken off the healthy diet. *Id.* at 25. In March 2021, after his A1C levels increased, Webb informed Huston that he would be placed on the healthy diet if his A1C levels did not improve into the 7 range. *Id.* at 24. In July 2021, Huston's lab results showed his A1C level was at 8.1, so Huston was placed back on the healthy diet. *Id.* In December 2021, Huston visited the ER with stroke-like symptoms and was diagnosed with transient ischemic attacks (TIA). *Id.* at 23. That same month, CCUSO medical staff informed Huston that he would need to remain on the healthy diet because of his TIA and increased risk of stroke. *Id.*

Huston's weight and BMI have mildly fluctuated throughout the relevant time period. Specifically:

---

[2] In his resistance (Doc. 22) to the motion for summary judgment, Huston attached several copies of his medical records. However, the information he provided does not conflict with the defendant's statement of undisputed facts.

| Date | Weight | BMI |
|---|---|---|
| 7/3/2018 | 255.4 | 36.6 |
| 7/10/2018 | 256 | 36.7 |
| 7/31/2018 | 255.8 | 36.7 |
| 8/30/2018 | 257.6 | 37 |
| 10/9/2018 | 257.6 | 37 |
| 10/9/2018 | 255.4 | 36.6 |
| 11/14/2018 | 248.8 | 35.7 |
| 1/2/2019 | 250.4 | 35.9 |
| 4/4/2019 | 257.1 | 36.9 |
| 7/11/2019 | 257.3 | 36.9 |
| 10/11/2019 | 244.1 | 35 |
| 1/13/2020 | 236.1 | 33.9 |
| 4/12/2020 | 234.2 | 33.6 |
| 7/16/2020 | 237.4 | 34.1 |
| 10/23/2020 | 241.8 | 34.7 |
| 4/2/2021 | 246 | NA |
| 7/18/2021 | 239.8 | 34.4 |
| 12/31/2021 | 224.4 | 32.2 |

*See* Doc. 19-1 at 2.

### IV. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with

4

affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof,

then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## V. ANALYSIS

Huston asserts his claim under 42 U.S.C. § 1983, which provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States. . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). However, § 1983 provides no substantive rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). Thus, "[o]ne cannot go into court and claim a 'violation of [42 U.S.C.] § 1983' — for [42 U.S.C.] § 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 (42 U.S.C. § 1983 "merely provides a method for vindicating federal rights elsewhere conferred.");

6

*Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) ("Constitution and laws" means 42 U.S.C. § 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution.).

To state a claim under § 1983, a plaintiff must establish a "(1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." *Kuha v. City of Minnetonka*, 365 F.3d 590, 606 (8th Cir. 2003), *abrogated on other grounds by Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385 (8th Cir. 2007). Huston argues that defendants violated his due process rights under the Fourteenth Amendment by placing him on a "healthy diet", which he alleges caused him to lose thirty-five pounds in three months. Defendants argue that they are entitled to summary judgment because Huston has failed to create a genuine issue of material fact regarding his claim that his restrictive diet is a violation of his constitutional rights. Alternatively, defendants argue summary judgment is appropriate because they are entitled to various immunities.

### A. *Failure to Provide Adequate Food*

"Civilly-committed individuals have a constitutional right to nutritionally adequate food." *Ingrassia v. Schafer*, 825 F.3d 891, 897 (8th Cir.) (citing *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992)). "[D]eliberate indifference is the appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care, and reasonable safety." *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006). Under this standard:

> [a] plaintiff may demonstrate violation of his constitutional rights by evidence "that the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food." *Id*. *See also Berry v. Brady* 19 F.3d 504, 508 (5th Cir. 1999) (suggesting that inmate claiming inadequate diet must allege losing weight, suffering adverse physical effects, or being denied nutritionally or calorically adequate diet), cited with approval in *Davis v. Missouri*, 389 Fed. Appx. 579, 579 (8th Cir. 2010). To

7

> demonstrate a constitutional violation, [plaintiff] must show that the defendants were deliberately indifferent to his nutritional needs, that is, "failed to act despite … knowledge of a substantial risk of serious harm." *See Farmer v. Brennan*, 511 U.S. 825, 842, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

*Ingrassia*, 825 F.3d at 897.

Here, Defendants were not deliberately indifferent to Huston's nutritional needs by placing him on a restrictive, healthy, diet. First, there is no factual basis to his claim of significant weight loss. Huston alleges that he lost thirty-five pounds in three months after being placed on the healthy diet in October of 2018. He claims his weight changed from 275 pounds in October 2018 to 240 pounds in January 2019. However, Huston's medical records indicate that he weighed 257.6 pounds in October 2018 and 250.4 pounds in January 2019, losing only 7.6 pounds in the three months. Thus, there is no evidence to support his claim that he was negatively impacted by the diet.

Nor has Huston provided evidence that the healthy diet was nutritionally inadequate or presented an immediate danger to his health. Indeed, Defendants placed Huston on the diet with the purpose of improving his health by addressing his diabetes, high cholesterol and history of stroke. The real issue here is that Huston simply does not like the healthy diet. However, "[p]ersons in confinement have no constitutional right to be served a particular type of meal." *Scott v. Benson*, No. 13-CV-4028-DEO, 2013 WL 6499258, at *10 (N.D. Iowa Dec. 11, 2013) (citing *Burgin v. Nix*, 899 F.2d 733, 734-35 (8th Cir. 1990)). Defendants are entitled to summary judgment on Huston's claim that they have failed to provide adequate nutrition.

Huston's claims also fail on their merits because he does not make any specific allegations against any individual defendants. "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). Huston has failed to allege any facts specifically connecting the defendants to the alleged constitutional violations. All the claims are general and insufficient to survive a motion for summary judgment. *See Bitzan v.*

8

*Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019) (finding district court properly granted summary judgment on § 1983 claims that failed to connect defendants to specific actions). Thus, and in the alternative, those claims are denied pursuant to 28 U.S.C. § 1915.

### B. Refusing Medical Care

"[A] competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment." *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278 (1990). "[W]hether respondent's constitutional rights have been violated must be determined by balancing his liberty interests against the relevant state interests." *Youngberg v. Romeo*, 457 U.S. 307, 321 (1982). The Eighth Circuit has found that the "preservation of prisoners' health is certainly a legitimate objective, and prison officials may take reasonable steps to accomplish this goal." *Garza v. Carlson*, 877 F.2d 14, 17 (8th Cir. 1989); *see also Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992) (finding forced-feeding when inmate's life or permanent health is in danger does not rise to constitutional claim).

Here, CCUSO has a legitimate interest in preserving Huston's health that outweighs Huston's right to refuse the diet. *See Garza*, 877 F.2d at 17. CCUSO medical staff placed Huston on a healthy diet to address his diabetes, high cholesterol, and history of stroke. Placing Huston on a healthy diet is a reasonable step to accomplish the goal of preserving his health. Indeed, his weight and cholesterol levels improved after being placed on the healthy diet. Thus, there is no constitutional violation. Moreover, this court has found that placing a civilly-committed individual on a diet is not the same as forcing medical care on that individual. *See Scott*, 2013 WL 6499258, at *11 ("Providing Mr. Scott with food is different from forcing medical care on Mr. Scott."). Defendants did not violate Huston's liberty interest in refusing medical care and are entitled to summary judgment.

9

## C. *Qualified Immunity*

Defendants argue that they are entitled to qualified immunity because they did not violate Huston's constitutional rights. Qualified immunity shields a government official from individual liability when his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *accord Davis v. Hall*, 375 F.3d 703, 711-12 (8th Cir. 2004). "The Supreme Court has generously construed qualified immunity protection to shield 'all but the plainly incompetent or those who knowingly violate the law.'" *Davis*, 375 F.3d at 711-12 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Id.* (citing *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)). To determine whether defendants are entitled to qualified immunity, courts ask (1) whether the facts alleged or shown establish a violation of a constitutional or statutory right, and (2) whether that constitutional right was clearly established as of the time of the alleged violation. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Unless the answer to both of these questions is yes, the defendants are entitled to qualified immunity. *See Burton v. St. Louis Bd. of Police Comm'rs*, 731 F.3d 784, 791 (8th Cir. 2013).

Because Huston has failed to create a genuine issue of material fact regarding his underlying claims, I need not reach defendant's alternative arguments regarding immunities. However, it is clear that defendants are entitled to summary judgment based on qualified immunity. Qualified immunity would not apply if CCUSO staff violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. However, I have already found that there was not a violation of a constitutional or statutory right. Therefore, the Defendants are entitled to summary judgment based on qualified immunity.

10

### D. Money Damages

Defendants further assert that in their official capacities they are immune from money damages. The Eleventh Amendment generally bars actions for monetary relief against states in federal court. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[T]he Eleventh Amendment bars suits in federal court 'by private parties seeking to impose a liability which must be paid from public funds in the state treasury.'" (quoting *Edelman v. Jordan*, 415 U.S. 651, 663 (1974))). The official capacity claims against all of the defendants are, in fact, suits against the state of Iowa. *Id.* (holding that suits against state officials in their official capacities are suits against the state). "When a state is directly sued in federal court, it must be dismissed from litigation upon its assertion of Eleventh Amendment immunity unless one of two well-recognized exceptions exist." *Barnes v. Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). Huston has not argued that either of the two exceptions (Congressional abrogation or state waiver) apply here.

Congress did not abrogate Eleventh Amendment immunity by enacting 42 U.S.C. § 1983. *See, e.g.*, *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 63 (1989). Further, this court has held on multiple occasions that Iowa has not waived sovereign immunity with respect to § 1983 claims. *See, e.g., Flugge v. Hollenbeck*, No. C16-2121-LTS, 2017 WL 2640674 at *3 (N.D. Iowa June 19, 2017) (gathering cases). To the extent Huston seeks monetary damages against the defendants in their official capacities, the defendants are entitled to summary judgment as to that request.

### VI. CONCLUSION

For the reasons set forth herein:

1. Defendants' motion (Doc. 19) for summary judgment is **granted** as to all claims. Judgment **shall enter** in favor of the defendants and against plaintiff Paul Huston.
2. Huston's motion (Doc. 24) to appoint counsel and motion (Doc. 25) for preliminary injunction are both **denied as moot**.

3. Because this order disposes of all claims, the Clerk of Court shall **close this case**.

**IT IS SO ORDERED.**

**DATED** this 16th day of August, 2022.

_____
Leonard T. Strand, Chief Judge